UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXAMP, INC., <br><br>                            Plaintiff, <br><br> -against- <br><br> CONSOLIDATED EDISON, INC., and ORANGE AND ROCKLAND UTILITIES, INC., <br><br>                            Defendants. | 24-CV-1502 (JGLC) <br><br> **OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Nexamp, Inc. brings this action against Defendants Consolidated Edison, Inc. and Orange and Rockland Utilities, Inc. for breach of contract, or in the alternative, promissory estoppel related to an energy storage project. For the reasons stated herein, Defendants' motion to dismiss for failure to state a claim is GRANTED.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the First Amended Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PPLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Defendant Consolidated Edison, Inc. ("ConEd") is an energy company in the United States. ECF No. 30 ("FAC") ¶ 3. Defendant Orange Rockland Utilities, Inc. ("O&R") is a gas and electric utility company wholly owned by ConEd. *Id.* On July 1, 2022, O&R issued a Request for Proposal ("RFP") for a stand-alone battery project (the "Project") that would provide relief to the electric grid by drawing from stored energy. *Id.* ¶¶ 4–5.

Plaintiff Nexamp, Inc. ("Nexamp") is a company founded in 2007 that offers renewable generation, energy efficiency, and carbon reduction solutions. *Id.* ¶ 6. Plaintiff submitted a

response to O&R's RFP ("RFP Response") on August 26, 2022. *Id.* ¶ 6. In the following months, Plaintiff and Defendants discussed land site options for the Project. *Id.* ¶ 7. During this time, Defendants communicated that only one of Plaintiff's proposed options, 148 Saddle River Road, Rampao, New York (the "Land"), was workable. *Id.* ¶ 8. The lease for the Land required a non-refundable payment of $600,000. *Id.* ¶ 10. Aware of this fact, Defendants continued to stress, via email, that securing the Land was a requirement for a project award. *See id.* ¶¶ 11, 14, 18. Plaintiff remained uncertain about whether to lease the Land up to early April 2023. *Id.* ¶ 22.

In early April 2023, Defendants orally informed Plaintiff that Defendants had internally approved of awarding the Project to Plaintiff. *Id.*; *see* ECF No. 46 ("Opp.") at 1. Plaintiff alleges that this communication moved Plaintiff to enter into a lease agreement for the Land on April 17, 2023. FAC ¶ 23. The following day, Defendants confirmed by email that Plaintiff had been awarded the project. *Id.* ¶ 24. The email confirmation states: "Congratulations, RFQ 4997519 – Monsey 2.0 Load Relief & Reliability will be awarded to NEXAMP INC! The Blanket Purchase Agreement will be for a 10 year term." ECF No. 30-1.

Plaintiff alleges that the oral communication and the email communication, separate and together, constitute the acceptance of RFP Response and the formation of a binding contract. *Id.* ¶¶ 24, 38–41. Specifically, Plaintiff states: "Nexamp's proposal itself did not establish an obligation on part of Defendants to enter a contract. However, Nexamp's proposal was a sufficiently definite offer such that its unequivocal acceptance would give rise to an enforceable contract." *Id.* ¶¶ 39–40.

On May 2, 2023, Plaintiff made a non-refundable payment on their Lease for $600,000. *Id.* ¶ 21, 25. Plaintiff and Defendants began exchanging drafts of a term sheet, but no term sheet was ultimately signed. *Id.* ¶ 27. Instead, on July 17, 2023, Defendants informed Plaintiff they were cancelling the Project. *Id.* On or about August 30, 2023, Defendants also informed Plaintiff

that they would not reimburse Plaintiff for any of its third-party costs related to the Project, including but not limited to the $600,000 lease payment. *Id.* ¶ 29.

On February 27, 2024, Plaintiff brought this action against Defendants, claiming breach of contract, or alternatively, promissory estoppel. ECF No. 1. Plaintiff's First Amended Complaint filed on June 14, 2024, is the operative complaint. ECF No. 30. Defendants moved to dismiss under Rule 12(b)(6) and 9(b) on July 30, 2024. ECF No. 38, 41 ("Mot."). In support of this motion, Defendants filed O&R's RFP, Plaintiff's RFP Response, and a redlined term sheet—documents that Defendants contend have been incorporated by reference into the FAC. ECF No. 39-1 ("RFP"), 39-2 ("RFP Response"), 39-3 ("Term Sheet"); Mot. at 2 n.1.

The RFP states in relevant part:

> **RFP § 5.4.** This RFP shall not be construed to establish an obligation on the part of O&R to enter into any contract, or to serve as a basis for any claim whatsoever for reimbursement of costs for efforts expended by Respondent. Furthermore, the scope of this RFP may be revised at the option of O&R at any time, or this RFP may be withdrawn or cancelled by O&R at any time. O&R shall not be obligated by any statements or representations, whether oral or written, that may be made by the Company, its employees, principals, or agents in connection with this RFP.
>
> **RFP § 5.7.** The duration of the Agreement will be for a term determined during contract negotiations and will depend on the parameters of the proposed solution(s) such as their ability to defer traditional capital investments for as long as possible while meeting BCA criteria. Agreements will typically commence upon the completion of construction unless otherwise provided herein. In the event that the Company determines not to proceed with the project, the successful respondent will be paid in accordance with the amounts as agreed by the Respondent and the Company.

Plaintiff's Response to the RFP, which Plaintiff alleges to define the terms of the purported contract at issue, states in relevant part:

> **RFP Response at 2**. Please note that the Nexamp has read, understands, and agrees to all provisions of the RFP.
>
> **RFP Response at 35.** Following RFP selection, Nexamp and O&R will collaborate on the negotiation and execution of a contract in the form of an energy storage services agreement. Engineering site visits, surveys, and inspections will proceed

3

in parallel with these agreement negotiations and will inform the system design. Once the final design and location is approved, Nexamp will work with the local fire department, conservation commission, planning boards, and others to secure approvals before beginning construction on site. Nexamp's proposal has assumed that the costs of securing permitting approvals will be borne by Nexamp.

Defendants additionally move to seal certain exhibits. ECF Nos. 22, 34. Plaintiff opposes the motion to dismiss, ECF No. 46, and takes no position on the request to seal certain exhibits.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

This discussion proceeds in four parts. First, the Court determines that both the RFP and RFP Response have been incorporated by reference into the FAC and may be considered in deciding this motion. Second, the Court finds that Plaintiff has not established the existence of a contract. Third, Plaintiff does not plead an alternative claim for promissory estoppel. Finally,

4

Defendants' motion to seal certain documents is granted in order to protect sensitive business and financial information.

I.   **The RFP and RFP Response Are Incorporated by Reference**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citations omitted). To be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 330–31 (S.D.N.Y. 2003)). "Limited quotation of documents not attached to the complaint does not constitute incorporation by reference." *Id.* (citing *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)) (cleaned up). Even where a document is not incorporated by explicit reference, a court may still consider the document on dismissal motion if the document is "integral" to the complaint—that is, the complaint "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal citations omitted).

The RFP Response has unequivocally been incorporated by reference: not only does Plaintiff make a clear and substantial reference to the RFP Response, but in doing so, Plaintiff alleges that the RFP Response forms the terms of the alleged contract at issue. FAC ¶¶ 39–40. In simpler terms, according to Plaintiff, the RFP Response *is* the governing contract that has been breached. *See id.* For that reason, the RFP itself is also incorporated, because the RFP Response explicitly states that Plaintiff has agreed to all terms of the RFP. RFP Response at 2; *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (explaining that "a contract may incorporate another document by making clear reference to it"). Additionally,

5

because the FAC alleges that the awarding of the Project via email and oral communication creates a binding contractual obligation, it necessarily relies upon the terms of the RFP, which define the Project award and reservations. *See* FAC ¶¶ 39–40; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (considering the language of agreement on a motion to dismiss, even though the agreement was not attached to the complaint, because the complaint relied "heavily upon its terms and effects"). Moreover, in the absence of any objection by Plaintiff, the Court is satisfied that "no dispute exists regarding the authenticity or accuracy" of the two documents. *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

The Term Sheet, however, is an extrinsic document that the Court cannot consider without converting this motion to one for summary judgment. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion . . ." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Though Plaintiff references the drafting of the Term Sheet, Plaintiff indicates no reliance upon its terms or effects—only the fact that it was ultimately discarded when Defendants cancelled the Project. *See* FAC ¶ 27. The Court therefore disregards the Term Sheet.

## II. Plaintiff States No Breach of Contract Claim

To state a claim for breach of contract under New York law,[1] the FAC must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3)

---

[1] The parties assume in briefing that New York law governs this action, and "implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc*. 238 F.3d 133, 138 (2d. Cir. 2000) (quoting *Tehran Berkeley Civ. & Env't Eng'rs v. Trippetts-Abbet-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Sequi*, 91 F.3d 337, 348 (2d Cir. 1996).

The dispositive issue here is whether an agreement existed. No contract exists unless there is "an offer, acceptance, consideration, mutual assent and intent to be bound." *Negotiatus Corp. v. Viola Inc.*, No. 24-CV-243 (KPF), 2025 WL 416021, at *4 (S.D.N.Y. Feb. 6, 2025) (internal citations omitted). In the absence of a formally executed written agreement, parties may still enter into a binding oral contract if all the elements of contract formation are met. *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). In addition, New York law recognizes that certain preliminary agreements—that is, agreements to later enter into a formal contract—may constitute enforceable contracts. *BAE Sys. Info. & Elec. Sys. Integration Inc. v. L3Harris Cincinnati Elecs. Corp.*, 716 F. Supp. 3d 206, 218 (S.D.N.Y. 2024). The key to whether such a binding preliminary agreement exists is the intent of the parties. *Id.* (citing *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.,* 145 F.3d 543, 548 (2d Cir. 1998)). To discern the intent of the parties to be bound, a court must look to "the words and deeds of the parties which constitute objective signs in a given set of circumstances." *Id.* (quoting *Adjustrite*, 145 F.3d at 549). If, however, "either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." *Winston* 777 F.2d at 80. Parties need not expressly reserve the right not to be bound prior to the execution of a document, if the language and conduct of the parties indicate such an intent. *See id.* at 81.

Here, Plaintiff has failed to plead any intent to be bound by the written email, oral communication, or any preliminary agreement. Rather, the documents incorporated by reference indicate irrefutable intent to *not* be bound. The RFP expressly states that it "shall not be construed to establish an obligation on the part of O&R to enter into any contract," RFP § 5.4,

7

and that agreements "will typically commence upon completion of construction unless otherwise provided herein." *Id.* § 5.7. The RFP Response, which Plaintiff alleges forms the terms of the governing contract, expressly notes that Plaintiff "has read, understands, and agrees to all provisions of the RFP."[2] RFP Response at 2. Moreover, the RFP Response provides that "[f]ollowing RFP selection, Nexamp and O&R will collaborate on the negotiation and execution of a contract . . . ." *Id.* at 35. To be sure, the fact that the RFP "is not itself a binding agreement does not foreclose the possibility that the parties entered into a contract (oral or written)." *CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 260 (E.D.N.Y. 2023). But even the RFP Response indicates that it accepts the RFP's express disclaimer and provides for the future negotiation and execution of a contract.

The email and oral representation that Plaintiff claims are the executions of a binding contract are, therefore, no more than agreements to further negotiate a contract. Even construing this language in the light most favorable to Plaintiff, the Court fails to find an adequately pled contract—especially where Plaintiff appears to be a sophisticated party that has been operating in this space since 2007. *See* FAC ¶ 6; *Jordan Panel Sys., Corp. v. Turner Const. Co.*, 45 A.D.3d 165, 166 (1st Dep't 2007) (declining to find the existence of a contract where "undisputed documentary evidence establishes that defendant advised plaintiff—in writing, and in terms that left no room for doubt—that defendant did not intend to be contractually bound . . . until both of these highly sophisticated parties had signed the contemplated written agreement.").

Plaintiff argues that Defendants' repeated emphasis on the importance of securing the Land was a "collaborat[ion] on the negotiation of the contract," and that such contract was

---

[2] Plaintiff contends that the RFP is irrelevant because Defendants made the relevant promises after Plaintiff submitted the RFP response, and that these relevant promises were not in connection with the RFP. Opp. at 10–12. The Court rejects this argument given that the RFP Response explicitly agrees to all provisions of the RFP and that no alleged promises by Defendants revoke the applicability of the RFP terms or RFP Response terms.

executed by the April 18, 2023, email. Opp. at 14. Plaintiff relies on statements by Defendants such as:

- "Land and siting is THE DEAL in this scenario. Without proper land and siting, we don't have a project and cannot execute this." FAC ¶ 14.

- "[W]e need Nexamp to have that relationship with a third party land owner. So, I would say then concentrate on the orange lot [the Land] for pricing." *Id.* ¶ 12.

- "Does Nexamp have a Letter of Intent from the Landowner for [the Land]? If no, Could a letter of intent be secured from Landowner in the next few days? As you know the land has the highest importance due to siting and permitting challenges." *Id.* ¶ 16.

- "As a follow up to our discussions last week, has there been any movement on the LOI from the landowners? . . . The LOI is a requirement for awarding projects." *Id.* ¶ 18.

While these statements do convey pressure on Plaintiff to lease the Land, nothing in these statements negates the reservation of Defendants' intent to be bound. Defendants have at most conveyed that Plaintiff might be awarded the Project if Plaintiff acquired the Land. As Plaintiff acknowledges in its own RFP Response, being awarded the Project merely commences the process for contract negotiation. *See* RFP Response at 35. Moreover, Plaintiff has failed to allege that at the time they leased the Land, the parties had agreed upon any details regarding pay, performance timeline, or other key terms to their purported contract. Ultimately, the Court can only construe from the FAC that Plaintiff assumed the risk of leasing the Land in the absence of an enforceable agreement.

### III. Plaintiff States No Promissory Estoppel Claim

Promissory estoppel is a doctrine that provides alternative relief in the absence of an enforceable contract where one party relied on another's promise. *Randolph Equities, LLC v. Carbon Cap., Inc.*, 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009). Under New York law, the elements of promissory estoppel are "1) a clear and unambiguous promise; 2) reasonable and

9

foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Lamda Sols. Corp. v. HSBC Bank USA*, 574 F. Supp. 3d 205, 214 (S.D.N.Y. 2021) (citing *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)).

Plaintiff fails at the fundamental requirement of promissory estoppel: the pleadings do not show a clear and unambiguous promise to complete the Project or reimburse Plaintiff for its lease payment in the event of a cancellation. Nowhere does the FAC identify a promise to reimburse Plaintiff for the lease cost or to complete the Project. Rather, the RFP explicitly maintains that it shall not "serve as a basis for any claim whatsoever for reimbursement of costs for efforts expended" and that the RFP "may be withdrawn or cancelled by O&R at any time." RFP § 5.4. And Plaintiff's RFP Response recognizes that Plaintiff "has read, understands, and agrees to all provisions of the RFP." RFP Response at 2.

Plaintiff contends that Defendants' communications, including those that emphasized the importance of land and siting, implied a representation that Defendants would complete the Project. *See* Opp. at 8–10. If there is any promise to be inferred from Defendants' alleged oral acceptance and email acceptance of the RFP Response, it is a promise to negotiate with Plaintiff toward a contract. Plaintiff does not allege that Defendants broke such a promise, and in fact alleges that negotiations occurred. FAC ¶ 27. There is no claim for promissory estoppel.

### IV.    Defendants' Motion to Seal Is Granted

Defendants seek to seal the RFP Response and Term Sheet, which contain sensitive business and financial information. ECF Nos. 22, 34. "[C]ourts in this District routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information." *See In re B & C KB Holding GmbH,* No. 22-MC-180 (LAK) (VF), 2023 WL 2021299, *1 (S.D.N.Y. Feb. 14, 2023) (collecting cases). This is especially applicable where, as here, documents involving commercially sensitive information do not

contain the type of information that impacts the judicial process. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice.") (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). The technical contents of the RFP Response and the entirety of the Term Sheet played no role in the Court's analysis, which was on the limited matter of whether a contract or promise was adequately alleged. Defendants' motion is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Claims are dismissed with prejudice. Defendants' motion to seal is GRANTED. All temporarily sealed documents shall remain sealed. The Clerk of Court is directed to close the case.

Dated: March 25, 2025
      New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge